Hon. MILO L. BENNETT,
Hon. LUKE P. POLAND,
Hon. ASA O. ALDIS,  } Assistant Judges.
Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,

---

## In re MERRILL BINGHAM.

*Power of probate courts to enforce their decrees by imprisonment. Habeas corpus. Executors and administrators.*

The probate court has no authority, for the purpose of enforcing a final decree for the mere payment of money, to imprison the party against whom such decree has been made, and an administrator so imprisoned is entitled to be discharged on *habeas corpus*.

*In re* Merrill Bingham.

It seems, however, that the probate court may enforce by imprisonment its interlocutory decrees in proceedings pending before it, which are necessary to bring such proceedings to a final decree; and also may in that way enforce against its appointees such final *specific* decrees as require the delivery by them to others of specific articles of property, or even specific money, held by them merely as depositaries.

But a decree against an administrator, who has been discharged and has settled his account, to pay over to his successor the balance of money found due from him to the intestate, such money having been received by him for the sale of the personal and the use of the real estate of the intestate, is not such a specific decree as can be enforced by the probate court by imprisonment.

HABEAS CORPUS addressed to the sheriff of Addison county, who made return that he held the relator in custody in the common jail of that county, by virtue of a warrant signed by Hon. Calvin Tilden, judge of probate for the district of Addison. This warrant set forth that previous to the 1st of January, 1857, the relator and Alonzo L. Bingham were appointed by the probate court for the district of Addison, administrators of the estate of Reuben P. Bingham, deceased; that on the 8th of May, 1858, they were by said court duly removed from such office of administrators, and that Jacob W. Conroe was duly appointed administrator *de bonis non* of said estate; that the relator and his co-administrator on the 4th of January, 1859, settled their account, as such administrators, before the probate court, from which settlement it appeared that there was then remaining in their hands the sum of two thousand, five hundred and sixty-eight dollars and ninety-one cents, belonging to said estate, and that the probate court thereupon decreed that they deliver and pay over to said Conroe, as administrator *de bonis non*, the said sum upon demand; that on the 14th of March, 1859, said Conroe showed to said probate court that notwithstanding he had demanded said sum of the relator and Alonzo L. Bingham, they had neglected to pay the same to him, and he therefore prayed for a warrant for their arrest and imprisonment until they should comply with such decree; that thereupon the probate court issued a citation to the relator and said Alonzo to appear before that court on the 26th of March, 1859, to show cause why a warrant for their imprisonment should not issue against them, according

to such petition ; that this citation was duly served upon them, and that at the appointed time they appeared before the court, and a full hearing was had upon such petition and it was made to appear that the statements therein contained were true ; that the relator and the said Alonzo L. Bingham declined to answer any questions before said court in regard to the subject matter of such petition except through their counsel; and that thereupon the probate court adjudged that the relator and said Alonzo had unjustifiably and improperly neglected and refused to comply with the order of said court above mentioned, and had not shown any cause why a warrant should not issue for their imprisonment until they should comply with such order, and that such a warrant ought to issue. The warrant then proceeded to direct the respondent to apprehend the relator and said Alonzo, and commit them until they should pay the said sum, or be otherwise discharged according to law.

It further appeared from an affidavit of the judge of probate; that the balance so found in the hands of the relator and Alonzo L. Bingham, and which they were ordered to pay over to the administrator *de bonis non*, was arrived at in the settlement of their account by charging them with the amount received by them for the sale of the personal property belonging to the estate; and also with the use of the real estate from the death of the intestate to the time of the settlement of their account, and deducting from this aggregate their expenditures as administrators.

It also appeared that a suit was pending upon the bond given by the relator and his associate administrator, the breach assigned being the neglect to pay over to the administrator *de bonis non*, the balance in their hands belonging to the estate.

*Linsley & Prout, J. W. Stewart* and *T. P. Redfield*, for the relator.

1. The probate court is a court of limited jurisdiction, and no where is the authority conferred upon it to issue process in the nature of final execution to compel the payment of a claim.

Sections 12 and 13, p. 322, Comp. Stat., were only intended to give the court authority to enforce its rules and orders, and

*In re* Merrill Bingham.

to punish a disturbance of its proceedings; *contempts*, as such.

This is the construction of these sections when considered in connection with the act creating the system. Section 12 provides that the process of the court shall be in conformity to the *rules of law*. Section 13 is subject to this limitation, and has no application to all orders the probate court may make in the settlement of an estate.

The neglect or refusal of the relator complained of, was not a contempt. No act was committed in the presence of the court, and while it was in the exercise of its public functions, which is indispensable in the commission of the offence, especially in reference to inferior magistrates or courts of limited jurisdiction.

The statute, Comp. Stat 375, sec. 2, gives an ample remedy for the neglect complained of, by an action on the administrator's bond, in favor of all interested in the estate, and also provides that it shall be prosecuted according to the rules of law, on *breaches assigned*. In this action the defendant may plead any defence existing, and take issue to the country. The summary mode of proceeding, adopted in this case, deprives the relator of these rights which are guaranteed to every citizen.

A similar provision to those sections of the statute, on which the power of imprisonment by the probate court is claimed to rest, is found in Slade's Comp. p. 333, sec. 4. This act was passed in 1821, but not an instance is known where the attempt has been made to give it the application and effect claimed in this case. The universal practical construction of that act, as well as of the sections of the Comp. Stat. in question, is opposed to the construction now claimed.

2. We insist that the probate court has no power to enforce by imprisonment an order like the one in question in this case.

The balance found due from the relator to the estate was not property in *specie* belonging to the estate, but merely a *debt* secured by and merged in the bond; Hill on Trustees pp. 777–8; 3 Paige 38; 11 Paige 603.

If the probate court ever had the power claimed in this case, it has been modified by the general law prohibiting imprisonment; Comp. Stat. 251, sec. 67; *Blunt* v. *Page*, 11 Paige 603.

By the Comp. Stat., 242, sec. 2, writs are authorized to be

issued against the body, and by sec. 75, p. 216, the same powers are given to the court of chancery that are claimed for the pro, bate court in this case, but these provisions, providing for arrest and commitment, are subject to the general law relating to impris, onment; *Cannon et al.* v. *Norton*, 16 Vt. 364; 16 Vesey 376.

*L. E. Chittenden* and *Edward J. Phelps*, for the respondent.

I. In connection with the settlement of the estates of deceased persons, the jurisdiction of the probate court is exclusive and comprehensive. Having the power to make all necessary orders and decrees in regard to the subject matter of its jurisdiction, the power to compel their performance necessarily follows; and this power the statute expressly provides may be exercised by a warrant for the imprisonment of the party refusing to perform them; Comp. Stat. chap. 47, secs. 12 and 13, p. 322.

II. The order of the probate court to the relator was strictly within its jurisdiction. The effect of the order was not simply to create a debt from the relator and his co-administrator to the estate, but it was a decree for the performance of a specific act, the performance of which can be enforced, if necessary, by imprisonment.

The relation of an administrator to the estate is strictly that of a trustee. He is in no sense a debtor to it. Hence the jurisdiction of the English courts of equity over the settlement of administrator's accounts; Story's Equity Jur. sec. 532.

He cannot become a purchaser of the estate even by paying a full price for it: *Green*, *Admr.* v. *Sargent*, 23 Vt. 466; and this for the reason that he cannot contract with himself, as he must do, to turn himself into a debtor to the estate.

In contemplation of law, the property of the estate in the hands of an administrator is always several and distinct. He has no right to commingle it with his own, nor to do any act to destroy its identity. He has no right to use it as his own, and there is no method known to the law by which he can change his duties and liabilities from those of a trustee to those of a mere contract debtor; BROWN, J., in *Seaman* v. *Duryea*, 10 Barbour 533; *Id.* 1 Kernan 330.

III. The proper proceedings have been taken to enforce this

order. The provisions of the statute, Compiled Statutes, secs. 12 and 13, page 322, have been followed. The warrant for the imprisonment of the relator, under the statute, could properly issue as soon as the court were informed of his neglect to comply with their order. It is not necessary in such cases to proceed by way of an attachment for contempt, as in a court of equity.

But even if it were otherwise, the practice of the court of equity in cases of contempt has been followed. The relator was duly notified of the motion for an attachment, and was summoned to appear and show cause why such motion should not be granted. He persisted in refusing to comply with the order, and declined to answer any questions by the court except through his counsel.

IV. But it is claimed that the probate court have no power to enforce by imprisonment the performance of a final order for the payment of money. To this we have several answers.

1. The language of the statute will admit of no such limitation. It is as comprehensive as words can make it. It applies to " *any* order or decree of the probate court." To engraft upon it this exception, and make it read " any order except a *final* order," destroys its whole spirit and intention.

2. Such a construction is a legal absurdity. It is as if the court should say, we admit the existence of this power so long as its exercise is wholly ineffective, but the moment it is made to serve any useful purpose we deny it.

3. There is a far greater necessity for its application to final than to interlocutory decrees.

4. No statute is necessary to enable the probate court to punish in the ordinary case of a contempt for its authority committed in its presence. This is a power incident to every court; *In re* Cooper, ante p.

But this is not a *final* order in any legal signification of the term. It is made during the progress of, and to facilitate, the settlement of the estate. It is no more final than an order upon the administrator to appropriate a certain portion of the estate to the support of the widow and minor children.

V. This proceeding is not within the non-imprisonment act which only applies to actions founded on contract, and executions issued upon judgments recovered in such actions. This warrant

is not a *mesne* process, nor is it in any sense an execution issued on a judgment recovered in an action founded on contract. It is a proceeding to compel trustees to deliver over trust property to the party entitled to receive it after the right of the trustees to retain it has terminated; *Seaman* v. *Duryea*, 10 Barbour 533; 1 Kernan 330.

REDFIELD, Ch. J. This case involves the right of the judges of probate in the several districts in the State, under the provisions of the statutes, to enforce their final decrees on the accounts of executors and administrators by process of contempt. The terms of the statute are very broad; Ch. 47, secs. 12 and 13.

"Probate courts may issue all warrants and processes in conformity to the rules of law, which may be necessary to compel the attendance of witnesses, or to carry into effect any order, sentence or decree of such courts, or the powers granted them by law."

"If any person shall neglect or refuse to perform any sentence, order or decree of a probate court, such court may issue a warrant directed to any sheriff or constable in this State, requiring him to apprehend and imprison such person in the common jail of the county, until he shall perform such order, sentence or decree, or be delivered by due course of law."

The thirteenth section above, which is chiefly relied upon as the basis of the proceedings against the relator, is found almost in the same words, in the revision of the statutes in 1797. The twelfth section was first adopted by the revision of the probate act in 1821, by Mr. Everett, and is nothing more than an amplification of the provision already existing under the revision of Nathaniel Chipman, in 1797.

It is noticeable that the two sections together seem to define a course of proceeding very analogous to that in courts of equity. We think it could scarcely be claimed with any show of reason, that the legislature ever intended to give the probate courts any more summary powers in enforcing their decrees than those which pertained to the court of chancery. The probability is, we think, from the phraseology used, both in the revision of 1797 and of 1821, that the statute was intended to confer upon the probate

courts the same powers which belonged to courts of equity, in enforcing their interlocutory decrees, in regard to all pending proceedings in that court, so as to enable them to bring them to a final determination or decree.    And we should not be inclined to question that it might have been the purpose of this statute to enable the probate courts to require specific acts to be done by their officers and appointees, for the furtherance of justice and equity, and the due administration of the law, in regard to matters pending in that court.    This would certainly be a most convenient and reasonable power to be exercised by that court.    We are aware that some of the Massachusetts cases seem to indicate that the probate court cannot enforce a specific decree, requiring an administrator to inventory goods as belonging to an estate; *Boston* v. *Boylston*, 4 Mass. 318, and that the more appropriate remedy is a suit upon the administrator's bond.    But this case admits that the probate court may charge such administrator with the goods in his final account, which amounts to the same thing in another form.    And other cases in that State, upon the analogous subject of guardianship, seem to hold that the proper remedy is in the probate court; *Conant* v, *Kendall*, 21 Pick. 3ᴜ; *Brooks* v. *Brooks*, 11 Cush. 18; and deny all redress in the courts of chancery, or by direct action in the common law courts.

This court would still incline to the opinion that the probate court might require specific acts to be done by its officers and appointees, and might enforce such decrees by process of contempt under the sections alluded to.    And we are aware that the phraseology of the thirteenth section is broad enough to extend to all the final decrees for the payment of money made by the probate court.

But we should feel very reluctant to suppose the legislature purposed to give such extraordinary powers to the probate courts, unless that is obviously the only rational construction which the statute will bear.    We say this because it is obvious that no such powers were ever conferred upon any other court in the State, in enforcing its decrees or judgments.    At the very session at which this provision was first adopted, and as part of the same revision, a provision is made in regard to the court of chancery, "That when any decree shall finally be made, a writ of execution

may issue in the same form, and shall in all things have the same effect as writs of execution on judgments at law." As part of this same system of laws, it was in another chapter provided, at the same session (March, 1797,) when all these provisions were originated, that poor debtors should in all cases where the judgments were upon matters of contract, be entitled to the liberties of the prison upon giving bonds, and be discharged upon the surrender of all their property. In *Cannon* v. *Norton*, 16 Vt. 384, it was decided that debtors committed upon executions out of the court of chancery were entitled to the benefits of the statutes provided for poor debtors, with all their subsequent meliorations and exemptions. We think it would be impossible to conjecture any sufficient reason why the legislature should have invented, at the same time, and as part of the same system, a process for enforcing obedience to the decrees of the probate court so much more stringent and arbitrary than they were willing to confide to the court of chancery, whose jurisdiction was at that time exercised directly and exclusively by the supreme court. It would be impossible to suppose there could have been any such purpose at the time. The difference in the provisions, in regard to execution of their final decrees, between the probate court and the court of chancery, in this revision, is significant, as it seems to us, of what has been the practical construction of these provisions ever since, a period of nearly sixty years, viz : that the probate courts were left, and intended to be left, without the power of enforcing their final pecuniary decrees, which were in the nature of judgments merely, by process of execution.

And it is certainly not a little remarkable that if this statute was intended to confer upon the probate courts the power to enforce their judgments for the payment of money, by process of contempt, from which there was no appeal and no escape, it should never have been resorted to in all this long lapse of time ; that no contemporary jurist should ever have put the thing in practice, or alluded to its existence in such a form as to keep alive the tradition of such a power in that court, and thus have left the present generation without any knowledge of the existence of any such provision, except as it is to be inferred from

23

the terms of the statute.   In a matter of this kind, which would have been so sure to be kept in use when once put in operation, we think the entire silence of tradition upon the subject is too significant to be readily answered.

It may be said there has been very little use of the sections referred to, in any form, and they must mean something.   That may be true, but if the statute had been understood to mean what is now claimed, it would have proved so effective a remedy that it would not have been permitted to slumber, in all reasonable probability, for a single year.   There are various grounds upon which, if this enactment were entirely new, and now for the first time to receive a practical construction, it might be argued that the general provisions of this statute should, or might fairly, be extended to the final decrees of the probate court upon the accounts of executors and administrators.   The office of executor or administrator is fiduciary, and one of strict trust.   There is, therefore, more propriety in requiring a strict accountability than in ordinary cases of simple indebtedness, in the way of contract. But it will also be remembered that the final decrees of the court of chancery are often in matters of trust, and may require this stringency of remedy, as much as, or more than, cases of this character.   And although it may be true that the remedy in the court of chancery, by process of contempt, is not expressly taken away by the statute, it must, nevertheless, be conceded that it is so in effect.   It would be very unreasonable to suppose that the legislature intended to leave that still in force.   That is the view taken of a similar statute in New York; *Wegel* v. *Wegel*, 3 Paige 38.   And it is well known that in commitments out of chancery for the non-payment of money, the prisoners have been held entitled to the benefits of the insolvent laws, in England, even; *Rex* v. *Stokes*, Cowp. 136 ; *Rex* v. *Peeterill*, 4 Term 809 ; *Rex* v. *Davis*, 1 B. & P. 336.   But in *Rex* v. *Hubbard*, 10 East 408, it was held that one under imprisonment from an attachment for not paying the amount of an award, made a rule of court, was not entitled to the benefits of the Lords' Act, 48 Geo III, ch. 123, because that act is confined, in terms, to persons in execution *on any judgment*.   There would be the same difficulty in

giving the relator the benefit of the poor debtors' act, if this commitment were to be held valid.    For this *warrant* is not an *execution* upon any judgment.

But it has been said in argument that this is really a case of specific trust, where the moneys should have been in the hands of the relator, and may therefore be presumed to be so.    We are not inclined to question the right of a court of equity, in a case precisely of that character, to enforce a decree for specific performance by process of contempt.·   That would apply to cases where the defendant had in his possession family memorials, such as pictures and busts, and other mementoes, whose chief value consisted in their relation to the orator, and very likely to a case where the defendant had specific money, in stocks, or in a parcel, which he had no right to use, but of which he was the mere depositary.    And it would seem that the probate court might fairly be regarded as possessing some such power in the disposition of estates, under these statutory provisions, as we accord to the court of chancery.

But we do not regard this case as one of that class.    For if we concede that it is competent for the probate court to require the outgoing administrator to surrender to the administrator *de bonis non* such specific goods as remain in his hands unadministered upon, it is obvious that it will fall far short of the present case, as it appears upon the face of the papers.    This is a final account of the former administrators, of their whole administration.    Instead of any attempt to charge them with any specific goods in their hands undisposed of, with a view to giving them over into the hands of the present administrator, the former administrators are charged with the entire inventory of the estate, as the basis of their account.    This at once vests the absolute title of the goods in them, as having been in fact converted by them into money, or which, from the time elapsed, should have been so converted.    The decree proceeds then upon the basis that the relator and his co-administrator are liable for so much money which they have received, or ought to have received, from the sale of the personal and the use of the real estate of the intestate.

Now it is in vain to attempt to refine upon this state of facts, and to make it anything but a debt, a mere money debt, and

nothing more. There was no specific money in the hands of the relator or his associate which could be traced as the specific money of the estate. The money, when paid, became the money of the administrators. There is no ground to claim that there was any such duty to keep the money separate, as would render them liable to an action of trover for the use of it, or to an indictment for embezzlement on account of any use to which they might put it.

The decree of the court of probate then is one for money due, and for that only, and is strictly a debt and nothing more. And we are satisfied there is no ground to consider that there was any power in the probate court to commit the relator for not paying the amount found due upon his administration account.

We think the case is the same in principle as a decree of distribution among creditors, or heirs, or legatees. The obligation is no different because the relator was ordered to pay to the new administrator from what it would be in any case where the executor or administrator is decreed to pay the balance of his account to creditors, or heirs, which is the usual and proper mode of making a final decree upon such accounts.

We have said all which is important, perhaps, to show that the relator is entitled to his discharge. If the probate court had no jurisdiction to issue any such process for the purpose for which this issued, it will not be claimed that the fact that the relator refused to answer questions, or did not take an appeal, will make any difference. The decree had already merged all the preceding items of account in a mere money debt. There was, therefore, no occasion for any further examination in regard to it. The probate court had no further power to enforce it. The appeal must then be to the courts of law in an action, either upon the bond, or of debt, upon the decree perhaps, if that were preferable. And the relator not taking an appeal from this unlawful proceeding no more gives it any validity as against him than if it had been a specific sentence of corporal punishment. The whole proceeding is irregular and void.

We are aware that our views are different from the decisions of the New York courts in *Seaman* v. *Duryea*, 10 Barbour 533 ; S. C. 1 Kernan 327. But we regard that case as based upon

views somewhat artificial, and which we believe would not have been so prevalent with any court had the question arisen between other parties. To argue that the power in the probate court to compel an administrator to render his account, implies the power to compel the payment of the balance found due, and by the same kind of process, on the ground that rendering an account imports *ex vi termini*, the payment of the balance due, is more refined, not to say forced, than can be made altogether satisfactory to the mind, unless when we are attempting to devise some expedient to shield an innocent officer from the relentless pursuit of an incensed party, who has been indeed unjustly restrained of his liberty, but who ought not to show a very severe spirit of retaliation, even for such an error, or mistake of the law, until he is able to pay such honorary debts as the balance of a trust account, which, although it is but a mere debt, in the law, is one of a very honorary character among men, and justly so regarded.

Relator discharged.