## JOHN LEACH *v.* DAN P. PEABODY & JEROME B. BROMLEY.*

*Judge of Probate. Executor. False Imprisonment.* Gen.
St. c. 48, s. 15; R. L. ss. 20, 35, 2109.

A judge of probate under the statute—Gen. Sts. c. 48, s. 15; R. L. s. 2035—can law-
fully cause an executor to be imprisoned, who wilfully refuses to perform an
order of the Probate Court, directed to him to pay monthly certain sums of
money for the maintenance of the testator's widow and children during the
settlement of the estate.

TRESPASS for false imprisonment. Heard on an agreed
statement of facts, June Term, 1884, VEAZEY, J., presiding.
Judgment *pro forma* for the defendants.

The parties agreed on the following facts: The plaintiff,
on November 19, 1874, was confirmed and appointed execu-
tor of the will of Ebenezer Leach. Said will was duly
proved in the Probate Court, of which court the defend-
ant, Bromley, was judge. On January 25, 1875, the execu-
tor filed an inventory of the estate. The amount of claims
allowed by commissioners was $11.67. On October 10, 1876,
the Probate Court, after due notice and hearing, ordered
and adjudged that there should be added to the inventory
certain bonds, mortgages, money, etc., in the possession of
the testator at the time of his decease, amounting to $19,700.
The widow, Rosina S. Leach, waived the provisions of the
will in her favor. On October 10, 1876, an order was also
made by the Probate Court, after due notice and hearing,
allowing to said Rosina, as the widow of the testator, and
her two minor children, being also the children of the said
testator, and constituting his family, for their support dur-
ing the settlement of said estate, the sum of $12 per month,
to be paid her by said executor out of the personal estate of

---

* Decided, February Term, 1884.

the deceased, on the 10th day of each and every month thereafter during the settlement of said estate; and also allowing her the use of the homestead and eighteen acres of land; and requiring the executor to pay her the further sum of $50 within one month to defray her expenses in procuring said allowance. Afterwards, on the 14th day of February, 1877, after due notice and hearing, a further like allowance of $18 per month in addition to said former allowance, was made by the Probate Court, which said executor was ordered to pay said Rosina as such widow for her support and that of her family, during the settlement of the estate.

The executor appealed from both orders. The County Court and the Supreme Court dismissed the appeal. See *Leach* v. *Leach*, 51 Vt. 440.

On the 23d day of February, 1878, the said Rosina presented her petition to the Probate Court, praying that the executor be cited before the court to show cause why he had not obeyed said orders, and that he be punished for contempt in not obeying the same.

After due notice and hearing the evidence the Probate Court adjudged, that the executor wilfully and without cause refused to obey said orders, and that he was guilty of contempt of said court in not obeying and complying with the same. And it was ordered thereupon "that he be committed for his said contempt to the common jail at Manchester or Bennington, and there to remain until he should obey and perform said orders and decrees, or be otherwise delivered by due course of law. And a warrant for his commitment was, by order of the defendant Bromley, acting as judge of said Probate Court, issued" by the register of said court, dated March 3, 1879. The warrant was delivered by the register to the attorneys of said Rosina, and by them placed in hands of the defendant Peabody, a sheriff, for service. The defendant, Peabody, committed the plaintiff by virtue of said warrant to the keeper of the

Leach *v.* Peabody.

jail at Manchester, on June 25, 1879. The plaintiff remained in actual custody a portion of the time, and in nominal custody the remainder of the time, until he was released on a writ of *habeas corpus.* This imprisonment was the trespass complained of. See *In re John Leach,* 51 Vt. 630. The Probate Court denied an application for an appeal from the order adjudging the plaintiff guilty of contempt.

*Burton & Munson* and *Martin & Eddy,* for the plaintiff.

The action of the defendant, Bromley, subsequent to the ordering of the payments, was without jurisdiction. The warrant was void upon its face. The order upon the plaintiff was a final one. *Leach* v. *Leach,* 51 Vt. 440. The statute, R. L. s. 2035, authorizing the Probate Court to enforce its orders by imprisonment, is held to refer only to the control of specific property, and to such interlocutory proceedings as are necessary to bring matters to a final decree. *In re Bingham,* 32 Vt. 329.

In the Bingham case the relator was discharged on the express ground that the Probate Court had no jurisdiction of the process against the person to enforce a final decree for the payment of the money. The same view was taken by REDFIELD, J., in *In re* Leach, 51 Vt. 630. The Probate Court has only special and limited jurisdictions. *Brown* v. *Sumner,* 31 Vt. 673; *Holden* v. *Scanlin,* 30 Vt. 180.

A judge of a court of limited jurisdiction, who exceeds his jurisdiction, is liable. There is a clear distinction between judges of inferior and superior courts. *Vaughn* v. *Congdon,* 56 Vt. 116; *Wright* v. *Hazen,* 24 Id. 146; *Miller* v. *Seare,* 2 Bl. W. 1141; *Taaffe* v. *Downes,* 3 Moore P. C. 41; *Walbridge* v. *Hall,* 3 Vt. 119; *Bradley* v. *Fisher,* 13 Wal. 335 (80 U. S. bk.; 20 L. ed. 646); *Lange* v. *Benedict,* 73 N. Y. 12; *Busteed* v. *Parsons,* 54 Ala. 393; *Houlden* v. *Smith,* 14 Q. B. 841; *Watson* v. *Bodell,* 14 M. & W. 57; *Dynes* v. *Hoover,* 20 How. 65; *Clarke* v. *May,* 2 Gray, 410; *Grumond* v. *Raymond,* 1 Conn. 40; Cooley Torts, 419.

There was no jurisdiction of the subject-matter. The court could not issue an execution against property or person. The subject-matter was what was presented by the petition; and that was a matter between the plaintiff and defendant in a common law form.

The method adopted was, in effect, imprisonment for debt. The court, having no power to enforce its final decrees, could not apply the process of contempt to accomplish what it is not authorized to do.

*Prout & Walker* and *J. B. Bromley*, for the defendants.

The allowance was a necessity. The court had exclusive jurisdiction; and the adjudication is final. *Richardson* v. *Merrill*, 32 Vt. 33; *Sawyer* v. *Sawyer*, 28 Vt. 245; *Meech* v. *Weston*, 33 Vt. 563.

If the widow's right to a maintenance is a debt against the estate, a remedy upon the executor's bond might be appropriate; but it is not a debt, nor a claim in the nature of a debt. The order was only interlocutory, against a share of the property, which originated in no contract or implied liability. Wap. Pr. R. s. 571; *Leach* v. *Leach*, 51 Vt. 440; *Adams* v. *Adams*, 22 Vt. 50; *Boyden* v. *Ward*, 38 Vt. 628.

The jurisdiction of the Probate Courts is the same, in matters of this kind, as that exercised by ecclesiastical courts in England. 15 Am. L. Rev. 428; *Peters* v. *Peters*, 8 Cush. 529; *Waters* v. *Stickney*, 12 Allen, 12; *Bronson* v. *Ward*, 3 Paige, 18; 3 Bl. Com. 102.

In this State there is no need of resorting to the Court of Chancery for aid in compelling obedience to an order of the Probate Court, as that power is given to the Probate Court itself by statute. R. L. s. 2035; Gen. St. c. 48. s. 15; *Seymour* v. *Seymour*, 4 Johns. Ch. 409; *Kimball* v. *Fisk*, 39 N. H. 110; 44 N. H. 258; 11 N. Y. 324.

This provision should be held to mean just what it says. It is not inconsistent with the non-imprisonment act; for

Leach v. Peabody.

that act applies only to process "issuing on a contract express or implied." Here was no contract obligation. 75 N. Y. 351; Wap. Pr. R. ss. 263, 543; *Brown* v. *Slater*, 16 Conn. 192: *Holcomb* v. *Holcomb*, 11 N. J. Eq. 281; 2 Barb. Ch. Pr. 271; *Patrick* v. *Warner*, 4 Paige, 397; 2 Jac. Fish. Dig. 2031; *In re* Cooper, 32 Vt. 253; *Park* v. *Park*, 80 N. Y. 156; *Quidneck Co.* v. *Shaffer*, 26 Alb. L. J. 356. It is a court of record; and the judge was acting in a judicial capacity. Cooley Torts, 408; 2 Add. Torts, ss. 883, 890; *Lange* v. *Benedict*, 73 N. Y. 12; *E. R. Gaslight Co.* v. *Donnelly*, 93 N. Y. 557; 15 Am. L. Rev. 428; *Grove* v. *Van Duyn*, 27 All. L. J. 86; *Davis* v. *Strong*, 31 Vt. 332; *Stearns* v. *Miller*, 25 Vt. 20.

The opinion of the court was delivered by

POWERS, J. If the orders made upon the plaintiff by the judge of probate created a *debt* against the plaintiff, his subsequent imprisonment for non-compliance with them was unlawful. *In re Bingham*, 32 Vt. 329.

When brought up on *habeas corpus* he was released by REDFIELD, J., who seems to have regarded Bingham's case as controlling. *In re John Leach*, 51 Vt. 630.

The statute in force when these orders were made, Gen. St. c. 49, s. 29, reads: "All the estate of the testator, real and personal, shall be liable to be disposed of for the payment of his debts and the expenses of administering his estate; and the Probate Court *may* make such reasonable allowance as may be judged necessary for expenses of the maintenance of the widow and minor children, or either, constituting the family of the testator, out of his personal estate, or the income of his real estate, during the progress of the settlement of the estate, but never for a longer period than until their shares in the estate shall be assigned to them."

In the case of intestate estates, the language of the statute then in force, Gen. St. c. 51, s. 1, sub-s. 2, is: "The widow and children, constituting the family of the deceased, *shall* have such reasonable allowance out of the personal estate as the Probate Court shall judge necessary for

their maintenance during the progress of the settlement of the estate, according to their circumstances."

In the Revision of 1880 no distinction is made between testate and intestate estates as to the allowance made to the widow and children, which leads to the inference that the legislature regarded the two sections above quoted as identical in scope and spirit if not in letter. The two sections are now embodied in s. 2109 R. L.

This court in *Sawyer* v. *Sawyer*, 28 Vt. 245, construed these two sections as practically identical.

Although a testator is allowed to control the destination of his property after his decease, still it is to be done subject to certain restrictions made by the statute. Sec. 29, c. 49, Gen. St. declares that all the estate, real and personal, of a testator shall respond to debts and expenses of administration. The succeeding clause, under which these orders were made, subjects all the estate to the further burden of maintaining the widow and children so far as the Probate Court may judge necessary. In other words, the statute appropriates the assets to this purpose, but leaves the amount to be fixed in the discretion of the Probate Court. Debts, expenses of administration, and a reasonable allowance for the support of the family, are preferred claims upon the assets which the testator cannot ignore in his disposition of the estate.

In *Leach* v. *Leach*, 51 Vt. 440, being an appeal from one of these orders, this court said that the order "appropriates the assets and property of the estate for present and current use and consumption without return from anybody in any form or manner."

When the widow then applied in this case for an allowance for support, she was not making a claim which called for the litigation of any doubtful matters or the settlement of any contention with the executor or the estate he represented; but she made claim to an allowance which the *law gave* her; and it did not depend upon the executor's assent or

dissent whether she should have it. The question was wholly between her and the Probate Court. The executor was no party to the inquiry and was entitled to no notice of the application. The Probate Court might properly of its own motion call him in to show the condition of the estate in aid of its discretion in measuring out the allowance, but he in no sense is an adversary party against whom a judgment can be pronounced. The order made in the premises by the Probate Court operates upon the assets in the hands of the executor.

. Now in all this there is no element of personal indebtedness existing against the executor. No judgment is rendered against him; no contract obligation of his is found. The executor is not ordered to pay a debt, but to perform an administrative act respecting the assets of the estate to which they are subjected by law. The order upon him to pay this allowance no more creates a debt against him than does the customary order made by the court to pay the claims allowed by commissioners.

In this view of the statute it is clear that the plaintiff was not committed to jail for the non-payment of a debt; and so Bingham's case is not in point.

Sec. 15, c. 48, Gen. St. empowers probate courts to issue warrants for the imprisonment of persons refusing to perform its orders.

In Bingham's case the court said: " We should not be inclined to question that it might have been the purpose of this statute to enable the probate courts to require specific acts to be done by their officers and appointees for the furtherance of justice and equity and the due administration of the law in regard to matters pending in that court" * * * "and might enforce such decrees by process of contempt under the sections (of the statute) alluded to."

The order in this case imposed a mere ministerial duty on the executor, and we can conceive of no case where this statute can have effect if this be not one.

We hold, therefore, that the imprisonment of the plaintiff was lawful and the judgment is affirmed.