† GILMORE, *in Equity*, *versus* GILMORE *& als.*

In equity proceedings, where the claims set up by one of the parties against the other, are resisted on the ground of fraud, and that question is presented to the Court, and judicially determined in favor of such claims, and the case is sent to a *master* to find the amount due, *he* is unauthorized to reëxamine the question of fraud.

Nor can he rightfully receive any testimony bearing thereon, but all the legal evidence had at the hearing, bearing upon the question to be determined by the master, may, by him, be considered.

A party to a bill, who, in his answer, professes himse f ready to pay a note which he had given, when it could be done with sal ty to himself; and after the decree that the same should be paid to a receiver appointed by the Court, sets up a prior *part payment* of the note, and refuses to pay the same in full, and the accumulated interest thereon while the suit was pending, is liable and punishable for a contempt of Court.

IN EQUITY. This case was before the Court as reported in vol. 36, p. 544, and now comes up again on exceptions to the report of the master, and for instructions by the receiver then appointed by the Court.

The charge in the original bill was, that Martin Gilmore, one of the defendants and co-partner with plaintiff, having possession of certain notes described against one Pendleton, the property of the firm, transferred and delivered them to Patterson, another defendant, for the purpose of deriving benefit therefrom, personally, and with the design of defrauding plaintiff and creditors of the firm, and that Patterson had knowledge of these facts and thereby became a participator in the alleged fraud.

Pendleton, in his answer, admitted that he gave the notes and was ready to pay the same according to their tenor, to any party entitled to receive the same, and prayed the direction of the Court.

A receiver was appointed to obtain and collect the notes and pay over the proceeds according to the direction of the Court.

Patterson, in his answer, denied the fraud alleged, and set up certain claims against the firm which he had surrendered when he received the Pendleton notes.

The Court found that Patterson was guilty of no fraud, and referred the amount of his claims to a master.

At the hearing before the master, the complainant introduced his depositions used at the former hearing; also the mercantile books of the firm of M. & J. C. Gilmore, to show the absence of allusion to any transactions between said M. & J. C. Gilmore and said Patterson; also sundry business letters from Martin to J. C. Gilmore before Patterson received the notes.

This evidence of the complainant was objected to.

The master also admitted, against Patterson's objections, evidence of what Martin Gilmore said and did at other times than those of which Patterson had offered evidence, as bearing upon the question of fraud; and according to his report, the master found that there was a conspiracy by Martin Gilmore and Patterson to defraud the creditors of M. & J. C. Gilmore, and that the claim set up by Patterson, was, for the most part, fraudulent; and disallowed the larger part of it, referring some of the items to the consideration of the Court.

The counsel for Patterson excepted to the admission of the testimony and to the proceedings before the master, as transcending his authority and manifestly unjust in the particulars named in his bill, and prayed for the appointment of another master.

The receiver made return of his doings, *that* he had called on Patterson and received the notes in controversy; *that* he had called on Pendleton to pay them, but he declined unless an allowance was made on them of between three and four hundred dollars, which he claimed had been paid upon the notes, but not indorsed thereon. He also declined to pay any interest on said notes since the commencement of the suit, alleging that he had always been ready to pay the true sum due whenever he could find any one to whom he could safely make the payment.

No such partial payment appearing in the *answer* of Pendleton, the receiver declined to allow it, or to remit the in-

terest, since which time Pendleton had paid no further attention to the payment of the notes.

He prayed the direction of the Court, and whether they would issue their summary process against said Pendleton for his neglect to comply with the decree in this case.

*N. Abbot,* for Patterson.

*Rowe & Bartlett,* for complainant.

RICE, J. — This case is now before us on exceptions to the master's report.

At the original hearing of the case in Penobscot County, the question of fraud and collusion between Martin Gilmore and Patterson, was distinctly before the Court, and all the evidence which the parties produced, bearing upon that question, considered by the Court. As the law then stood, the Judge before whom the trial was had, was authorized to decide all matters of fact arising in the case. The burden of proof to establish fraud was upon the party alleging it. The evidence introduced at that time failed to satisfy the Court of the existence of fraud and collusion between Martin Gilmore and Patterson. The charge was therefore repelled. This Court have held that the decision of the Judge upon that point was conclusive. 36 Maine, 544. That question cannot, therefore, be reëxamined unless it be upon a rehearing by the Court, duly granted, for some sufficient cause not heretofore presented.

The question of fraud having been thus settled, the case was sent to a master to determine the amount that was due to Patterson from the late firm of M. & J. C. Gilmore. In this examination the master was not authorized to hear testimony to determine the question whether there was fraud on the part of Patterson and Martin Gilmore, as that question had already been judicially determined.

So far, therefore, as testimony was admitted and considered by the master for that purpose, his action was erroneous. The letters of Martin Gilmore, and certain declarations made by him, and also the books of M. & J. C. Gil-

more, appear by the report, to have been admitted solely for this purpose.   They should have been rejected.

The declarations of Patterson as to the amount due him from the firm of M. & J. C. Gilmore, made in his answers, not being responsive to the allegations in the bill, were not evidence upon that point.   But his answers before the master, when examined as a witness, on oath, were legitimate evidence to be considered by the master.   Such, also, is the character of the testimony of J. C. Gilmore.   All the depositions used at the trial may be properly referred to by the master, and so far as they tend to show the amount of indebtedness of the firm of M. & J. C. Gilmore to Patterson, may be considered by him.

For the reasons above, the exceptions must be sustained, and the case remanded to the master for further hearing. In his further examination the master will report in full, the evidence produced before him, and his decisions thereon, and if the parties are examined, that examination will be on written interrogatories and answers.

The defendant, Pendleton, refuses to pay to the receiver the amount of his notes, according to the decree of the Court, unless a very considerable portion of the principal and interest, apparently due thereon, shall be abated, and the receiver asks the direction of the Court.

In his answer, Pendleton professed his readiness, at all times, to pay over the amount of his notes, when he could do so with safety to himself.   No claim for abatement from the sum apparently due was then set up by him, nor was there any suggestion in his answer that any portion of said notes had ever been paid, or that the whole amount thereof was not justly due from him.

Under these circumstances, this refusal to pay his note to the receiver, has the appearance of a disposition to palter with the authority of the Court, if not to practice a fraud upon those who are interested in the proceeds of the property in his hands.   Such a course cannot be approbated nor permitted.   It is therefore decreed that an attachment im-

·mediately issue from the office of the Clerk of the Courts for Penobscot County, against the said Pendleton, as for a contempt of Court, and that said Pendleton be thereon arrested, and committed to prison, and there detained until he comply with the decree of the Court by paying to the receiver the amount of his notes, both principal and interest, without abatement, together with all costs that may arise by reason of said attachment, or he be discharged from his imprisonment by order of this Court, or due process of law.

> *Exceptions to master's report sustained, and*
> *case remanded for further hearing.*