## Brown et al. v. McKay.

1. MASTER'S REPORT—*Exceptions to, etc.*—The neglect of a party excepting to a master's report to point out what the evidence is, upon the conclusions of the master, which the party disputes, renders the report of the master of no assistance to the court, and is a practice which the court is under no obligation to tolerate.

2. MASTER IN CHANCERY—*Duty When a Cause is Referred.*—Where a cause is referred to a master to take testimony and report his conclusions as to the facts, it is not proper for him to do more than he is ordered to do. It is irregular and improper to set forth the evidence in his report, without the special direction of the court.

3. HANDWRITING—*Proof by Comparison.*—In a proceeding in chancery where it was shown that a trust deed was duly proven, and that it was made by the same person whose name appears thereon as the maker of the notes, it was competent for the master to compare the signatures and conclude that the notes were signed by the person who signed the trust deed.

4. MORTGAGES—*What Matters Subsequent to the Execution Need Not be Proved.*—It is not necessary that the transfers of property subsequent to the making of a mortgage, or the interests of the defendants, or that the trustee had been applied to join with the *cestui que trust* in the filing of the bill, or the election to declare the entire amount due, should be proven.

**Memorandum.**—Foreclosure proceedings.    Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1893, and affirmed. Opinion filed December 21, 1893.

### STATEMENT OF THE CASE.

This was a bill filed July 30, 1892, to foreclose a trust deed, dated December 4, 1890, executed by William C. Brown to Alexander A. McKay, as trustee, upon certain premises described by metes and bounds, containing twenty-five acres situated in Sec. 6, T. 39 N., R. 13 east, Cook county, to secure Brown's three notes of $6,666.66 each, payable to John A. McKay, in one, two and three years after date, with interest at six per cent, payable semi-annually, said notes covering the balance of the purchase price of said premises, conveyed by McKay to Brown December 4, 1890.

The bill alleges *inter alia*, that the trust deed provided

that if default should be made in the payment of said notes,
or any part thereof, or the interest thereon, the whole of
said principal sum and interest should thereupon, at the
option of the legal holder thereof, become due and payable,
and on his application it should be lawful for the trustee in
his own name, or otherwise, to file a bill to foreclose, etc.;
that by reason of default in the payment of a portion of
the principal of the first note and the semi-annual interest
due on the two remaining notes on June 4, 1892, said John
A. McKay elected and declared the whole of the principal
and interest of the three notes due and payable; that
Brown conveyed said premises to Reynolds, December 4,
1890, subject to the lien of said trust deed, which he agreed
to pay; that Reynolds conveyed to Hans P. Johnson an
undivided one-fifth of said premises, March 30, 1891, subject
to said trust deed, said Johnson agreeing to pay one-fifth of
said incumbrance; that the conveyance to Johnson was in
trust for himself and Anton J., Jennie O. and Josephine D.
Johnson, said Hans P., Anton J. and Jennie O., being then
minors; that on June 6, 1892, Reynolds conveyed to Brown
his interest in said premises.

All but one of the adult defendants answered, admitting
the indebtedness of Brown to McKay, the execution and de-
livery of the notes, the ownership thereof, the trust deed,
default in the payment of said indebtedness, and the amount
due as set forth, except the sum of $500 for attorney's fee;
that the interest in said premises of the Johnsons was cor-
rectly alleged in the bill, except that Hans P. Johnson had
already paid to McKay the sum of $1,570, and that he has
always been, and now is ready and willing, and before the
filing of said bill, offered to McKay to pay his share of said
indebtedness at the maturity thereof upon receiving a release
and discharge of his interest in said premises from the lien
of said trust deed, which McKay refused.

Subsequently the adult defendants who had answered,
amended their answer, denying that McKay, prior to the
filing of said bill, either elected or declared the whole of the
principal and interest due and payable, but averring that at

the maturity of said principal note and of the coupon interest notes, the time of payment thereof was extended, and that the time of such extension had not expired when the bill was filed.

The minor defendants answered through their guardian *ad litem.*

The Johnsons also filed a cross-bill, alleging *inter alia,* that Hans P. had paid his one-fifth share of said incumbrance (or $1,570 out of the $3,600 paid); that prior to the maturity of the principal and interest notes, he was and has since been able, ready and willing and has offered to pay his share of said indebtedness, on condition that said McKay release his interest from his said lien, but that McKay has refused the offer; and praying either for a partition of the premises or an apportionment of said incumbrance, and that upon payment of Johnson's share of the indebtedness, his share of said premises might be released from the lien of said incumbrance.

A demurrer to the cross-bill was sustained.

The cause having been referred to a master "to take proofs and report the same with his opinion on the law and evidence," the master's report was filed February 1, 1892, stating that he had taken the depositions of John A. McKay, Julius Stern and Horace White, for complainant, and Lewis Reynolds, William F. Reynolds and Hans P. Johnson, for defendants; that complainant offered also the three principal and coupon notes, and the trust deed; and from the evidence thus taken he finds that the notes and trust deed were executed at the time, in the manner, and for the purposes in the bill of complaint set forth, and are now held and owned by John A. McKay; that the principal promissory note became due and payable December 4, 1891; that the total paid on the principal thereof was $2,400, as follows: $900 December 9, 1891; $500 January 15, 1892, and $1,000 January 29, 1892; that interest on all of said three notes has been paid up to December 4, 1891; that default has been made in the payment of $4,266.66, balance of principal on first note; that owing to such default and default in paying

interest on all the notes since December 4, 1891, the holder of said notes and trust deed elected to, and did, declare the whole amount of principal and interest on the three notes due and payable, and the same thereby became and is now due and payable; that the total amount of principal and interest due on said three notes is $18,846.18; that complainants by the terms of the trust deed are entitled to $500 for their solicitors' fees in this proceeding, that being a reasonable fee for the services rendered, and to be rendered in this cause, for which amount McKay has a lien on said premises, making a total of $19,346.18; that all the material allegations in the bill are sustained by the proofs, and the prayer thereof should be granted and a decree entered in accordance therewith.

The following objections to the draft report of the master were filed, and being by him overruled, they were re-filed as exceptions to the report made to the court:

1st. For that the master has, by his report, certified that he found that the notes and trust deed in the bill of complaint herein mentioned were executed at the time, in the manner and for the purpose in said bill of complaint set forth, whereas he ought to have certified that the evidence introduced before him did not support said allegations of said bill of complaint.

2d. For that the master has, by his report, certified that owing to a default of payment of the balance of the principal due on exhibit 1, and of the interest upon all of the notes involved herein since December 4, 1891, the holder and owner of said notes and trust deed elected to, and did declare the whole amount of principal and interest of all said notes due and payable, and the same thereby became, and now are due and payable, whereas said master ought to have certified that the evidence introduced before him did not show either said election, declaration, nor the alleged fact that the whole amount of principal and interest of all of said notes thereby became, and now are due and payable; but, on the contrary, said evidence showed that said election was not made, and the privilege of election was waived, and

the time of payment of said first principal note and interest thereon extended by the holder and owner of said notes, which extension had not expired at the time of the filing of the bill herein.

3d.   For that the master hath in and by said report certified that there is now due and owing the sum of $19,346.18, whereas he ought to have found nothing to be now due and owing.

4th.   For that the master hath in and by the said report certified that said complainant, John A. McKay, is entitled to a lien for $500, attorneys' and solicitors' fees, whereas he should have certified that said McKay was entitled to nothing on that account.

5th.   For that the master has certified in and by his said report, that all of the material allegations in the bill were sustained by the proofs; that the prayer thereof should be granted, and a decree entered in accordance therewith, whereas he should have found that none of the material allegations of said bill were sustained by the proofs, that the prayer thereof should not be granted or decree entered herein in accordance therewith.

6th.   Because the master admitted incompetent testimony objected to by said defendants as shown by said report.

7th.   Because the master, by his said report, has assumed to pass on judicial questions.

Exceptions to the master's report filed in court February 7, 1893, in the words and figures of the foregoing objections.

F. W. BECKER, attorney for plaintiff in error.

TATHAM & WEBSTER, attorneys for defendants in error.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

These exceptions require the court to search through the mass of evidence to determine if they are well taken.   There is a neglect to point out what the evidence is upon the con-

clusions of the master, which the party disputes. Such a
practice renders the report of the master of no assistance
to the court, and is one which the court is under no obligation
to tolerate. Huling v. Farwell, 33 Ill. App. 238; Heffron
v. Gore, 37 Ill. App. 257. Where a cause is referred to a
master to take testimony and report his conclusions as to
the facts, it is not proper for him· to do more than he. was
ordered, and it is irregular and improper to set forth the
evidence in his report, without the special direction of the
court. McClay v. Norris, 4 Gil. 370; Daniell's Ch. Pr. 1300;
Matter of Hemiless, 3 Paige 305; Mott v. Harrington, 15
Vt. 185; Goodman v. Jones, 26 Conn. 264; Gilmore v. Gil-
more, 40 Maine 53.

Either party may have from the master certified copies
of such portion of the testimony as either may desire to
present to the court upon the hearing of exceptions. Hoff.
Ch. Pr. 345; Donnell v. Columbian Ins. Co., 2 Sumner 366.

If, as in the present case, the court has ordered the mas-
ter to return, with his report, the evidence presented before
him (a practice, considering the overburdened condition of
the courts, of very doubtful utility),· it is yet upon the facts
as found by the master that the court proceeds, if it render
a decree based upon such report. If either party is dissat-
isfied with the master's report, exceptions may be filed
thereto; if the exceptions be to findings of fact, the evi-
dence as to such facts should be set forth or pointed out
with such directness that the court may readily find the
same without searching through the entire evidence.
Huling v. Farwell, *supra;* Heffron v. Gore, *supra;* Daniels'
Ch. Pr. 1300; Story v. Livingston, 13 Pet. 359. In the pres-
ent case, the findings of the master are sufficient to sustain
the decree. Appellants, in this court, urge that there was
no evidence of the execution of the notes. This is a conclu-
sion drawn by appellants from the evidence; what the evi-
dence was they fail to point out. But, referring to the mas-
ter's report, we find that the execution of the trust deed
was duly proven; that that instrument was made by the
same person whose name appears thereon as the maker of

the notes; it was, therefore, in the power of and competent for the master to compare signatures and conclude that the notes were signed by the person who signed the trust deed. Mr. McKay also testified that the notes produced before the master were those described in the bill. It was not necessary that the transfers of the property subsequent to the making of the mortgage, or the interests of the defendants, or that the trustee had been applied to to join with the *cestui que trust* in the filing of the bill, or the election to declare the entire amount due, should be proven. Cheltenham Imp. Co. v. Whitehead, 128 Ill. 279; 8 Eng. and Am. Enc. of Law, 193; Harper v. Ely, 56 Ill. 179; Hoodless v. Reid, 112 Ill. 105.

This writ of error is prosecuted after a sale has been made under the decree, at which sale there was realized the full amount of the decree, interest and costs. We are not aware of any authority holding that sale must be made in the inverse order of alienation, where the alienation was merely of an undivided portion of the whole.

It also appears that at the sale, any portion of the premises for which any person desired to bid was first offered; if any of the defendants wished to have first sold any particular portion, an opportunity was thus given to them; the property sold is yet subject to redemption. We find no error in the record warranting a reversal of the decree, or of any of the orders of the court below. We do find the decree to be equitable and in accordance with the law, and it, together with the order confirming the master's sale, is affirmed.