[No. 650.    September 1, 1896.]

## IN RE JOSE F. JARAMILLO.    HABEAS CORPUS.

CONTEMPT—FAILURE OF ADMINISTRATOR TO OBEY DECREE OF COURT—
ATTACHMENT.—An attachment for contempt will not be issued against
an administrator for failure to obey a decree of court ordering him to
pay a sum of money found to be due his co-administrator on a settle-
ment of the estate, where it appears that the defendant administrator
has no such sum in his possession, and is unable to obtain the same.

ID.—IMPRISONMENT FOR DEBT—REPEAL OF STATUTE.—Held: That so
much of Compiled Laws 1884, section 2158, as provides for execution
against the body of defendant, was repealed by section 2183, Id., for-
bidding execution against the body of the execution debtor, except in
cases of fraud and personal· injuries with the proviso therein con-
tained.

ID.—FINDING—EVIDENCE.—In such proceeding, a decree finding that a
certain sum of money was in the hands of the defendant administra-
tor, and ordering a portion thereof, found to be due defendant's co-
administratrix, to be paid to her, was not sufficient to show that
defendant had such sum in his possession or under his control, so as
to make him guilty of contempt in not paying it over, where defend-
ant denied under oath that he had the money or had been able to
obtain it.

PETITION for writ of habeas corpus.  Granted, and
petitioner discharged.

CHILDERS & DOBSON for petitioner.

A court in this territory can not enforce a decree
simply for the payment of money by process of attach-
ment for contempt and imprisonment.  Noonan v.
Lee, 2 Black. 499; Orchard v. Hughes, 1 Wall. 73.
These decisions were rendered on the provision of rule
92 with reference to foreclosure cases, which is ex-
pressly applicable to territorial courts.  Equity Rule
92, U. S. Cir. and Disct. Ct.; Comp. Laws, sec. 522;
Id., secs. 2157, 2158; 2 Danl. Chy. Prac., pp. 1030,

1042, secs. 6, 7; Battle v. Bering, 7 Yerg. (Tenn.) 529; 3 Danl. Chy. Prac. 2377, Rule 8; Rev. Stat. U. S., sec. 990; Mallory v. Fox, 20 Fed. Rep. 409; 2 Barb. Chy. Prac. 271, and notes; In re Hess, 1 N. Y. Sup. 611. See, also, Coughlin v. Ehlert, 39 Mo. 285; Seagear v. Seagear, 36 N. W. Rep. 536; Leech v. Peabody, 2 Atl. Rep. 745; Dig. N. Y. Chy. Rep., p. 32, sec. 27; 10 Am. and Eng. Ency. Law, 214, note; Id., 217, 218; Mfg. Co. v. Fox, 20 Fed. Rep. 409; Ex parte Hardy, 68 Ala. 303; Board of Education v. Scoville, 13 Kan. 17; Robert v. Stoner, 18 Mo. 482; Wightman v. Wightman, 45 Ill. 167; Steller v. Steller, 25 Mich. 159; Holmes v. State, 2 Green (Iowa), 120.

Nor can it be contended that the decree comes within the exception (fraud) of the statute. Carr v. State, 17 S. Rep. 350. The language of section 2183, Compiled Laws 1884, "except in cases of fraud" relates to fraud in contracting the debt, not to failure to comply with the statute. State v. Norman, 14 S. Rep. 968, 969; Smith v. Smith, 92 N. C. 304; Galland v. Galland, 44 Cal. 475; Ex parte Grace, 12 Iowa, 209; 7 Am. Dec. 529, and note.

The answer of respondent, that he did not have and never did have the money, was full and complete, and on it he should have been discharged. McCarrell v. Mullins, 21 Atl. Rep. 778. See, also, State v. Galloway, 98 Am. Dec. 404; Williamson's case, 67 Id. 380, and note; Comm. v. Leckey, 36 Id. 41, 42, note; Caton v. State, 87 Id. 49; Shattuck v. State, 24 Am. Rep. 624.

NEILL B. FIELD for respondent.

To deny to a court of chancery in this territory the power to enforce such a decree is to deny to it the right to exist and administer justice. 2 Danl. Chy. Prac., p. 1032.

There is nothing in the English statutes or in the

statutes of the territory, which attempt to modify or take away the power of the court to enforce its decrees by process of contempt.   2 Danl. Chy. Prac., p. 1042.

Where an executor or other fiduciary admits the receipt of trust funds such admission is conclusive against him when ordered to pay such funds into court, or make other disposition of them.   Roy v. Gibbon, 4 Hare, 65; Richardson v. Bank of England, 4 Milne & C. 177; Haggerty v. Duane, 1 Page, 312; 7 Am. and Eng. Ency. Law, 406.

Section 2183, Compiled Laws 1884, by its express language is applicable to the cases of execution debtors, and this is a common law expression having.a well defined meaning, and no other meaning should be given to it.   An attachment for contempt, issuing out of a court of chancery, is in no sense such an "execution," and the above statute in no manner interferes with the power of a court of chancery to enforce the payment of money by an executor.   Chew's Appeal, 44 Pa. St. 250; Tome's Appeal, 50 Id. at 285.

It has been repeatedly held by courts of high authority that imprisonment for contempt in failing to pay money, as directed by a decree in chancery, is not in violation of the constitutional provision forbidding imprisonment for debt.   Ex parte Grace, 12 Iowa, 212; State ex rel. v. Becht, 23 Minn. 411; Musser v. Stewart, 21 Ohio St. 353.

If it be true that imprisonment for debt is abolished in this territory by section 2183, it is not abolished in cases of fraud, which are expressly excepted from its provisions.   Ex parte Clark, 20 N. J. Law, 648.   If the abolishment be conceded, it is at best but provisional, not absolute.   Comp. Laws 1884, sec. 2183, Proviso.

LAUGHLIN, J.—The petitioner, Jose F. Jaramillo, with Trinidad R. de Jaramillo and Celina C. Jaramillo,

were co-administrators of the estate of Telesfor Jara-
millo, deceased, and resided in Valencia county, New
Mexico; and in respect to the settlement of said estate
in the probate court for said Valencia county, there
was a suit and a judgment which was appealed from to
the district court for the Second judicial district for
said county; and on a hearing of the case in said dis-
trict court, certain findings were made by said court,
among which findings one was as follows, to wit:
"Eighth. The court doth further find that the fee of
$1,500 paid by Celina C. Jaramillo to Neill B. Field
should be a charge against said estate, and paid out of
the assets thereof; and that it is the duty of the said
administrator forthwith to reimburse the said Celina
C. Jaramillo, the said sum of $1,500, out of the money
found by this decree to be in their hands."

The petitioner failed to obey the decree and order
to pay over the said $1,500, and thereupon an affidavit
was filed and an attachment was issued against the
petitioner Jose F. Jaramillo as for contempt of court
committed by his failure to pay the said sum of money
as required by the terms of the decree of said district
court; and thereupon the petitioner was arrested and
brought before the said court; and the petitioner and
his co-administratrix, Trinidad R. de Jaramillo, filed
their answer under oath, in which answer among other
things they said: "Further answering these respond-
ents allege that they have not had, nor have they been
able to obtain sufficient money to pay the amount of
money required to be paid by them by the terms of the
said decree, since the rendition thereof and up to this
date."

On the hearing the court held that the answer was
insufficient, and thereupon issued a commitment com-
mitting the petitioner into the custody of the sheriff of
Valencia county, until he as such administrator shall
fully comply with the terms of the said decree of said

court. Thereupon the petitioner filed his petition in this court for a writ of HABEAS CORPUS, in which petition he alleged that he was advised by counsel and believed that the court by whom said commitment was issued had no jurisdiction to issue said commitment for the purpose of enforcing the said decree of the said court. And that said court can not enforce the performance of the said decree by process of attachment as for contempt.

In the answer filed by this petitioner and his co-administratrix, it is alleged that "they did not have the sum of money, represented by said items of personal property, for which they were held accountable, in their possession at the time of the rendition of said decree or any part thereof;" that the note (one of the items for $1,586.80) was a personal obligation of the petitioner to his brother, the said deceased, in his lifetime, which he was, at the time of the rendition of the decree and has ever since been, unable to pay; the other items were for money and live stock, and allege that they did not have the money in their possession nor were they able to obtain the money with which to pay the amount adjudged by the court in said decree to be by them paid."

*CONTEMPT: failure of administrator to obey order of court: attachment.*

It is contended by counsel for Celina C. Jaramillo; that the finding of the court that "the said sum of $1,500 out of the money found by this decree to be in their hands" is conclusive as against this petitioner that he and his co-administratrix then had the money in their possession, and that the petitioner can not be heard to traverse it by their answer; and that there being funds in the hands of the administrators, the court had jurisdiction to enforce obedience to its decree by attachment as for contempt on their failure to comply with the terms of the decree in paying over the money.

The decree of the court can be construed in this case only as a finding by the court that the petitioner and his co-administratrix owed the amount of money found due to their other co-administratrix, the said Celina C. Jaramillo, as it nowhere appears in the papers in the case that this petitioner and his co-administratrix, the said Trinidad R. de Jaramillo, admitted that they actually had the money on hand or in their possession at the time the decree was enrolled, or at the time the attachment and commitment were issued, but on the contrary, they state in their sworn answer that they did not have the money and were, and had been, ever since the enrollment of the said decree unable to obtain the money with which to pay and comply with the terms thereof, and such being the facts in this case, it therefore appears that this is an effort to enforce the payment of the sum of money named by the process of attachment as for contempt.

Counsel for said Celina C. Jaramillo has cited many cases in support of his contention that this is not a proceeding to collect a debt by process of attachment as for contempt, but is a process to compel obedience to an order of a court of chancery; but we are constrained to believe after a careful consideration of the cases cited that they do not apply to the case at bar.

In the case of Gilmore v. Gilmore, 40 Me. 50, the facts stated are that, "the charge in the original bill was, that Martin Gilmore, one of the defendants and copartners with plaintiff, having possession of certain notes described against one Pendleton, the property of the firm, transferred and delivered them to Patterson, another defendant, for the purpose of deriving benefit therefrom, personally; and with the design of defrauding plaintiff and creditors of the firm, and that Patterson had knowledge of these facts and thereby became a participator" in the alleged fraud. "Pendleton, in his answer, admitted that he gave the notes and was

ready to pay the same according to their tenor, to any party entitled to receive the same, and prayed the direction of the court.''

A receiver was then appointed to obtain the notes and collect the sums due, and he ''made return of his doings, that he had called on Patterson and received the notes in controversy; that he had called on Pendleton to pay them, but he declined unless an allowance was made, ''as to certain payments not credited on the notes, and he also declined to pay certain interest.''

In the opinion the court says: ''That defendant, Pendleton, refuses to pay to the receiver the amount of his notes, according to the decree of the court, unless a very considerable portion of the principal and interest, apparently due thereon, shall be abated, and the receiver asks the direction of the court.''

''In his answer Pendleton professed his readiness, at all times, to pay over the amount of his notes, when he should do so with safety to himself. No claim for abatement from the sum apparently due was then set up by him. Nor was there any suggestion in his answer that any portion of said notes had been paid, or that the whole amount thereof was not justly due from him.'' ''Under these circumstances, this refusal to pay his note to the receiver has the appearance of a disposition to palter with the authority of the court, if not to practice a fraud upon those who are interested in the proceeds of the property in his hands. Such a course can not be approbated nor permitted.'' And the attachment was issued.

It will be seen that the facts in that case were very dissimilar to the case under consideration. Counsel for Celina C. Jaramillo cites Chew's Appeal, 44 Pa. St. 247, which is almost directly in point of fact, to the case under consideration, and is founded upon most substantial reasons and logic, but it is based upon a statute which appears to me to be very different from

our own statute on this subject. The legislature in
that state in 1842, abolished imprisonment for debt,
but it expressly excepted, "proceedings as for contempt
to enforce civil remedies." And the court held that
the process as for contempt in disobedience of the
order of the court of common pleas to pay over the
distributive portion or sum so ordered was properly
issued on the ground that the process was to enforce a
civil remedy.

This case was cited with approval in Tome's
Appeal, 50 Pa. St. 285, and after referring to Chew's
case, supra, the court says: "But here the order is
founded upon an abuse of trust, and a fundamental
conversion of its funds, for an executor who refuses
either to give security or pay over after he is dismissed,
stands in the altitude of a speculator of the fund."

The facts were that Tome, the executor, had
come into the possession of the effects of the testatrix's
estate by virtue of that trust, and had failed to give the
security required of him by the orphan's court for
some breach of his trust, and an order was made on
him by the court of common pleas "to pay and deliver
over to his successor all the goods, chattels, effects and
estates of the testatrix in his hands." Which dis-
tinguishes it very materially from the case at bar.
And the court further said: "But his duty required
him to hand over at once everything to his successor,
or to obtain such qualifications of the order as the court
might deem necessary. Upon doing neither, he was
clearly in contempt, and it became necessary for the
court to enforce obedience to its order; not merely by
way of punishment for his contempt, but as a means
of reaching the purpose of the decree, and rescuing the
effects of the estate held by him without security." A
court of chancery most assuredly has the authority in
this jurisdiction to enforce an order in the nature of
that last referred to.

The case of Ex parte Grace, 12 Iowa, 208, was where a judgment had been obtained, execution issued and returned unsatisfied; the county judge then ordered the debtor before him under the authority of the statute, examined him and found that he had money in his possession and ordered him to turn it over to be applied on the judgment, and on his refusal so to do ordered him committed for contempt until he should comply with the order; whereupon he petitioned for a writ of HABEAS CORPUS and was, on hearing before Judge DILLON, discharged; the public prosecutor and jailor appealed, the supreme court held that, "if the county judge has jurisdiction to try such issues, then what power may he not exercise? Having no jurisdiction, he had no power to make the order, and though the disobedience of it was styled a contempt, it was not such in legal contemplation. For there could be no legal disobedience where there was no power to make the order continued." And the discharge of the petitioner was sustained.

Our statutes on this subject are as follows: Sec. 2157 (C. L. 1884). "The party in whose favor and judgment, order or decree in any court may be returned, shall have execution therefor in conformity to the order, judgment, or decree."

IMPRISONMENT for debt: repeal of statute.

Sec. 2158 (Id.). "The execution shall be against the goods, chattels, lands and body of the defendant against whom the judgment, order or decree shall be rendered: PROVIDED, that executions from justices of the peace shall not go against lands."

These two sections were enacted in 1846, and reenacted and incorporated into the Compiled Laws of 1865. In 1857 the following section became a law, to wit: "Sec. 2183 (C. L. 1884). No execution shall be issued upon any judgment against the body of any execution debtor, except in cases of fraud and personal

injuries:     PROVIDED, that the defendant, in execution, shall present under oath a schedule containing all his property, money, rights and credits."

This section was also reenacted and incorporated into the Compiled Laws of 1865. By this section it was no doubt the intention of the legislature to abolish imprisonment for debt, save as to the exceptions and proviso therein stated, and by the reenactment of all the sections above quoted into the Compiled Laws of 1865, the conflict which clearly appears was created, no doubt, simply by an oversight of the compiler; and it now becomes necessary to construe and dispose of the conflict which apparently exists, and in so doing it is required to uphold the intent of the legislature which enacted the last original law, and it is, therefore, held that the act of 1857 repeals the act of 1846, in so far as any conflict is apparent between the two acts; that is to say, that so much of section 2158 (C. L. 1884) as provides for executions "against the body of the defendant" is repealed by section 2183 (Id.), save as to the exceptions and PROVISO therein contained.

Now it is contended by counsel for Celina C. Jaramillo, that this petitioner has not brought himself within the PROVISO in section 2183, in that he has not "presented under oath a schedule, containing all of his property, money, rights, and credits."

The simple answer to this is that the papers in this cause do not show, nor is it contended, that any execution has ever been issued against the property or body of the defendant in the cause and the petitioner here. The process by attachment as for contempt is not an execution in contemplation of the statute. "And it is well known that in commitments out of chancery for nonpayment of money the prisoners have been held entitled to the benefits of the insolvent laws, in England even. Rex v. Stokes, Cowp. 136; Rex v. Peeteril, 4 Term. 809; Rex v. Davis, 1 B. & P. 336. But in

Rex v. Hubbard, 10 East, 408, it was held that one under imprisonment from an attachment for not paying the amount of an award, made a rule of court, was not entitled to the benefits of the Lord's Act, 48 Geo. 111, Ch. 123, because that act is confined in terms to persons in execution ON ANY JUDGMENT. There would be the same difficulty in giving the relator the benefit of the poor debtor's act, if this commitment were to be held valid. For this WARRANT is not an execution upon any judgment." In re Merrill Bingham, 32 Vt. 338.

The rule contended for by counsel for Celina C. Jaramillo, as stated in 2 Daniells' Ch. Prac. & Pl., sec. 1032, as to a decree for payment of money only, is not applicable now in this jurisdiction, because our statute authorizes the issuance of an execution on a decree in chancery the same as on judgment at law.

"No person shall be imprisoned for debt in any state on process issuing from any court in the United States, where by the laws of such state imprisonment for debt has been or shall be abolished. And all modifications, conditions and restrictions upon imprisonment for debt, provided by the laws of any state shall be applicable to the process of the United States issued from the courts of the United States to be executed therein." U. S. Rev. Stats., sec. 990.

After the enactment of this law by congress, the supreme court of the United States promulgated rule 8, which is as follows:

"Final process to execute any decree may, if the decree be solely for the payment of money, be by a writ of execution, in the form used in the circuit courts in suits at common law in actions of ASSUMPSIT. If the decree be for the performance of any specific act as, for example, for the execution for the conveyance of land or the delivery up of deeds or other documents, the decree shall, in all cases, prescribe the time within which the act shall be done, of which the defendant

shall be bound, without further service, to take notice, and upon affidavit of the plaintiff, filed in the clerk's office, that the same has not been complied with within the prescribed time, the clerk shall issue an attachment against the delinquent party, from which, if attached thereon, he shall not be discharged, unless upon a full compliance with the decree and payment of all costs, or upon special order of the court, or of a judge thereof, upon motion and affidavit, enlarging the time for the performance thereof. If the delinquent party can not be found, a writ of sequestration shall issue against his estate upon the return of NON EST INVENTUS to compel obedience to the decree." 3 Daniell, Ch. P. and P., p. 2377.

Afterward this rule was amended by the promulgation of rule 92, of the United States supreme court rules, by adding as follows:

"That in suits in equity for the foreclosure of mortgages in the circuit courts of the United States; or in any court of the territories having jurisdiction of the same, a decree may be rendered for any balance that may be found due to the complainant over and above the proceeds of the sale or sales, and execution for the collection of the same, as provided in the eighth rule of this court regulating the equity practice, where the decree is solely for the payment of money."

It is clearly seen from these rules that the ancient powers of a court of equity is not abrogated or abridged from the enforcement of its orders and decrees, except "when the decree is solely for the payment of money." And in that class of cases the decree is placed on the same plane with judgments at common law, that is, the enforcement of the decree for the collection of money by writ of execution.

From the examination of the whole decree it will be seen that it was a settlement of the accounts of the administrators with the estate of the deceased, and that

on that settlement the court found that
Finding: evi-
dence. this petitioner and his co-administratrix,
owed their other co-administratrix, Celina
C. Jaramillo, such sums of money as therein stated.
The decree states that, "the said administrators be,
and they are hereby decreed to have in their possession,
belonging to said estate, the sum of $3,034.94, after
having been given credit for all the items to which they
are legally entitled to, and out of which said amount,
it is ordered, adjudged, and decreed that the said ad-
ministrators shall forthwith pay the said Celina C. Jar-
amillo, the sum of $1,500, in accordance with the eighth
finding of fact herein"   *   *   *.

To hold that this is sufficient to show that the ad-
ministrators did actually have in their possession or
under their control, and where they could lay their
hands upon the actual cash, when they positively say
under oath in their answer, that they did not, nor had
they been able to obtain the money, would be support-
ing a refined technicality at the expense of the liberty
of the citizen.   In re Merrill Bingham, 32 Vt. 327.

In the case of Roberts v. Stoner, 18 Mo. 482, which
is a case somewhat similar to this, the court held that
"a writ of sequestration is a process for contempt, and
by chancery courts to compel a performance of their
orders and decrees.   Where there is a decree against a
party for the payment of money, or to do any other act,
this process can not issue until he is put into contempt,
or that it is shown that process can not be served."
"Where an attachment is served and a party refuses to
comply, he is then in contempt."   It would seem that
a sequestration merely to compel the payment of
money, can not now issue, as imprisonment for debt is
abolished.   As process against the body, for the non-
payment of a debt, can not now issue, there would be no
means of putting a party in contempt.   These remarks
are only intended for the decrees for the nonpayment

of money.    When the decree is for the performance of acts within the power of the party, he may be compelled by sequestration.    Such a process may have been proper, if it had been shown that Stoner had the money in his possession, and refused to give it up.    This manner of enforcing decrees is now very unusual, since the statute has given the writ of execution to courts of chancery to carry into effect their decrees."    *    *    *

The case of Coughlin v. Ehlert, 39 Mo. 285, was where the petitioner for HABEAS CORPUS, was adjudged in contempt for refusing to pay an allowance for alimony, and the court say:    "The party here was under no other contempt than that of refusing to pay the money which the court had ordered to be paid as alimony.    As process against the body for the nonpayment of a debt can not now be issued, there would seem to be no means of putting a party in contempt for disobeying orders or decrees for the mere payment of money."

In Steller v. Steller, 25 Mich. 159, Judge COOLEY, delivering the opinion of the court, says:    "Whatever may have been the proper construction of this statute, we are clear that, with imprisonment for debt forbidden, a party can not be imprisoned for noncompliance with such an order, except on the ground for contempt of the authority of the court.    There must be in the case something of wrong beyond the mere failure to pay money; and the party before he can be convicted and punished for it must have an opportunity to be heard in his own exculpation."    *    *    *    Galland v. Galland, 44 Cal. 475; Meyers v. Trimble, 3 E. D. Smith 612, where it is held that:    "If it appears that the debtor is unable to pay the sum ordered to be paid, that may be deemed a sufficient excuse when he appears to answer for apparant contumacy courts will not adjudge a defendant in contempt, for not doing an impossibility, nor for not doing what it is not in his power

to do, unless he has voluntarily disabled himself to do the act, when the creation of the disability was itself a contumacious act." Hosack v. Rogers, 4 Paize Ch. 603; Van Wezel v. Van Wezel, 3 Paize Ch. 38.

If the order on the administrators had been to require them to turn over and deliver up any specific article or articles or any specific sum of money which they might have acknowledged or confessed they then had in their possession, or in bank, or in their "strong box at home" or any of the specific property in their possession then belonging to the estate of the deceased, it would have undoubtedly been proper and its disobedience could have been enforced by an attachment as for contempt, for it is not intended to be held here that a court of chancery is bereft of any of its ancient and well founded principles or powers to enforce obedience to its orders and decrees by attachment and imprisonment of the contumacious delinquent. And especially in this class of cases where the administrators hold the property in trust for the use and benefit of the CESTUI QUE TRUST, which is usually regarded as one of the most important and delicate trusts known in equity. Where the order is to deliver up stocks, securities, bonds, mortgages, or to execute deeds of conveyances, or to deliver up deeds, contracts, documents, mementos, family pictures, articles held by the family and prized as heirlooms, or for the performance of any specific act in relation to the trust, the chancellor may reach out with his long arm, and lay the strong hands of equity upon the delinquent defendant and require immediate obedience to his orders, and on failure to obey may imprison him until he does comply with the orders. But the order complained of here does not come within any of those instances here enumerated, but it is simply an order to pay over money forthwith. Which petitioner says he has not and is unable to obtain. And his inability to comply is the contempt complained of.

And it is not shown or contended that he purposely or voluntarily brought about that inability.

For the foregoing reasons the petitioner is entitled to his discharge. And an order will be made accordingly.

SMITH, C. J., HAMILTON and BANTZ, JJ., concur.